UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff/Respondent, | ) ) | No. 7:98-CR-02-JMH-HAI |
| v. | ) ) | RECOMMENDED DISPOSITION AND |
| ELISHA JACOBS, | ) ) | ORDER |
| Defendant/Movant. | ) ) ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Federal prisoner Elisha Jacobs has filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  D.E. 99, 102, 106.  Convicted following a jury trial in 1999, the law has developed since then and very recently afforded Jacobs the ability to challenge his two convictions for violating 18 U.S.C. § 924(c).  The critical issue now is whether those two convictions are supported by qualifying predicate crimes of violence. The analysis requires looking back to a limited set of documents, including the Indictment and jury instructions.  After a searching and thorough consideration, the undersigned cannot find that valid predicate crimes of violence support the two § 924(c) convictions.  The result is a recommendation that the two convictions, which generated a combined imprisonment term of 300 months, be vacated.  The Court recognizes this is a decision of gravity and may mean Jacobs has been imprisoned without a basis since the expiration of his initial 70-month term.  The Court's findings are intended to bring clarity to a very complex legal examination of a record that is more than twenty years old.  Gaps exist that the Court has strained to fill, and counsel will be appointed to further enable review by the presiding District Judge.

The Court recognizes that Jacobs is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* motions more leniently than motions prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

Under § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

## I. Background

Jacobs was convicted of various offenses after a jury trial in 1999. His sentence was imposed as follows:

> 70 months on Counts 1,2,4,5 & 6, said terms to run concurrently with any sentence imposed in any other matter; 60 months on Count 3, said term to run consecutively with any sentence imposed in this matter and in any other matter; and 240 months on Count 7, said term to run consecutively with any sentence imposed in this matter and in any other matter.

D.E. 54 at 3-4. The Court of Appeals upheld his convictions and sentence in 2001. *United States v. Jacobs*, 244 F.3d 503 (6th Cir. 2001).

On November 5, 2019, the Court received a *pro se* motion under 28 U.S.C. § 2255, in which Jacobs sought to vacate his convictions on Counts 3 and 7. D.E. 99. Counts 3 and 7 charged violations of 18 U.S.C. § 924(c) for using and carrying a firearm in furtherance of a

crime of violence.  D.E. 2.  Because his initial motion was not signed under penalty of perjury

and did not substantially follow the § 2255 form, the Court ordered Jacobs to submit a corrected

motion.  D.E. 101.  On December 2, 2019, the Court received Jacobs's completed § 2255 form.

D.E. 102.  Careful to preserve his rights, Jacobs asked that his original motion and memorandum

and his subsequent § 2255 form be considered together.  D.E. 103.  He also indicated his

intention to file a reply brief.  D.E. 105.  Jacobs also obtained permission to amend his motion.

D.E. 106.  The Court is considering all of Jacobs's filings related to his § 2255 motion.  On

December 27, 2019, the government responded in opposition.  D.E. 108.  The Court received

Jacobs's reply brief on January 30, 2020.  D.E. 110.

## II.  Jacobs's Challenge to His § 924(c) Convictions Is Timely

Jacobs relies on the recent Supreme Court case of *United States v. Davis*, 139 S. Ct. 2319

(2019), as both the substantive basis of his motion and the basis for the motion's timeliness

under 28 U.S.C. § 2255(f)(3).  He argues that his two convictions under 18 U.S.C. § 924(c) are

invalid under *Davis*, and that *Davis* recognized a new right and is retroactive on collateral

review.  If *Davis* is not "retroactively applicable to cases on collateral review," then the motion is

untimely.  28 U.S.C. § 2255(f)(3).

The government concedes that the *Davis* ruling is retroactive, as "[o]ther circuits have so

held."  D.E. 108 at 2.[1]  The Supreme Court issued the *Davis* opinion less than a year ago, on June

24, 2019.  Jacobs's motion is therefore timely as to any claims that rely on *Davis*.

---

[1] As another court in this Circuit recently observed:

> Although the Sixth Circuit has not yet stated whether it considers *Davis* to have announced a new
> rule of constitutional law that is retroactively applicable to cases on collateral review, several other
> circuits have found that it does.  *See, e.g., In re Hammoud*, 931 F.3d 1032 (11th Cir. 2019); *United
> States v. Reece*, [938 F.3d 630, 635 (5th Cir. 2019), *as revised* (Sept. 30, 2019)]; *United States v.
> Bowen*, 936 F.3d 1091 (10th Cir. 2019).

*Spearman v. United States*, No. 4:15-CR-20758, 2019 WL 5455467, at *4 (E.D. Mich. Oct. 24, 2019).

### III.  Identifying the Predicate Crimes

In *Davis*, the Court held that 18 U.S.C. § 924(c)'s residual clause in its definition of "crime of violence" was unconstitutionally vague and therefore invalid.  *Davis*, 139 S. Ct. at 2336.  In August 2019, the Sixth Circuit issued an opinion which observed that kidnapping, post-*Davis*, does not qualify as a "crime of violence."  *Knight v. United States*, 936 F.3d 495, 497 (6th Cir. 2019) ("The government concedes that under *Davis* kidnapping in violation of 18 U.S.C. § 1201(a) is not a 'crime of violence' and thus Knight's conviction under § 924(c) for using a firearm during and in relation to kidnapping must be vacated.").

Relying on *Davis* and *Knight*, Jacobs initially argued he "was charged with two counts of violating 18 U.S.C. § 924(c) with the underlying crime of 'violence' being kidnapping in violation of 18 U.S.C. § 1201(a)."  D.E. 99 at 3; *see also* D.E. 102 at 4.

Upon initial review, however, the Court pointed out that Jacobs's § 924(c) convictions were not predicated on the kidnapping charges.  D.E. 104 at 3.  As Jacobs notes in his § 2255 form, he was convicted of all seven counts in the Indictment:

> Count 1:  Kidnaping (18:1201)
> Count 2:  Interstate Domestic Violence (18:2261(a)(2))
> Count 3:  Use of Deadly Weapon During Crime [of] Violence (18:924(c))
> Count 4:  Interstate Violation of Protective Order (18:2262)
> Count 5:  Interstate Domestic Violence (18:2261(a)(1))
> Count 6:  Possession of Firea[rm] While Subject to a Court Order (18:922(g))
> Count 7:  Use of Deadl[y] Weapon During Crime [of] Violence (#2) (18:924(c))

D.E. 102 at 1; *accord* D.E. 2 (Indictment).

Jacobs's first § 924(c) charge, Count 3, was predicated on interstate domestic violence, not kidnapping.  Count 3 was described as follows in the Indictment:

> On or about the 22nd day of February, 1997, at Dema, in Knott County, in the Eastern District of Kentucky,

> **ELISHA JACOBS,**

4

> defendant herein, did knowingly use and carry [a firearm] during and in relation to a crime of violence for which he could be prosecuted in a court of the United States, that is, causing his spouse to cross a state line in connection with domestic violence as set out in Count 2 above[.]

D.E. 2 at 2. For context, Count 2 alleged that Jacobs

> did by force, coercion, and duress, cause his wife, Lauretta Jacobs, to cross a state line between Kentucky and Tennessee, and in the course of said conduct, did intentionally commit a crime of violence, to wit: assault and rape, thereby causing bodily injury to said Lauretta Jacobs; in violation of Title 18, United States Code, Section 2261(a)(2).

*Id*. at 1. Accordingly, the predicate crime for Jacobs's first § 924(c) charge was interstate domestic violence in violation of 18 U.S.C. § 2261(a)(2).

Jacobs's second § 924(c) charge was also not predicated on kidnapping. Unfortunately, there is confusion in the record regarding which charge constitutes the predicate crime. There is both a typo in the Indictment and a disagreement between the Indictment and the jury instruction. Count 7 was charged as follows:

> On or about the 27th day of April, 1997, at Hindman, in Knott County, in the Eastern District of Kentucky,

> **ELISHA JACOBS,**

> defendant herein, did knowingly use and carry [a firearm] during and in relation to a crime of violence for which he could be prosecuted in a court of the United States, that is, interstate travel to violate a protection order, as set out in **Count 6** above[.]

D.E. 2 at 3-4 (emphasis added).

Count 7's reference to Count 6 is clearly a typographical error. Count 6 alleged a violation of § 922(g)(8), a firearm-possession offense. The count of the Indictment which charged "interstate travel to violate a protection order" was Count 4.

Count 4 alleged that Jacobs

with the intent to violate the portions of a domestic violence protection order entered against him that involved protection against threats of violence, repeated harassment, and bodily injury to Lauretta Jacobs, said protection order being Knott Circuit Court Order dated April 24, 1997, Case No. 97-CR-00002, did travel across state lines from Kentucky to Indiana, and did thereafter violate said protection order by engaging in acts of domestic violence, including assaulting and threatening Lauretta Jacobs; in violation of Title 18, United states Code, Section 2262.

D.E. 2 at 2. Based on the Indictment, then, it appears Jacobs's second § 924(c) conviction had, as the underlying crime of violence, interstate travel to violate a protection order.

Here is where the case becomes muddled. Although the Indictment links Count 7 with Count 4 (despite the typo describing Count 6), the jury instructions link Count 7 with Count 5. The jury instructions asked the jury to find whether Jacobs "knowingly used or carried a firearm during and in relation to the commission of the crime alleged in Count Five." D.E. 108-2 at 8. The "Five" here is not a lone typographical error. The same instruction tells the jury it must find that "on or about the 27th day of April, 1997, the defendant committed the crime as alleged in Count Five. I instruct you that Count Five is a crime of violence." *Id.*[2]

Count 5 of the Indictment charged Jacobs with interstate domestic violence, but under a different statutory subsection than Count 2. Count 5 alleged that Jacobs

did cross a state line between Kentucky and Indiana with intent to injure, harass, and intimidate his wife, Lauretta Jacobs, and did thereafter intentionally commit a

---

[2] Because the Indictment listed Count 6 as the predicate crime and the jury instructions listed Count 5 as the predicate crime, it appears that a "constructive amendment" to the Indictment took place.

A constructive amendment results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment.

*United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007) (quoting *United States v. Smith*, 320 F.3d 647, 656 (6th Cir. 2003)). A constructive amendment also occurs when "jury instructions differ from an indictment, even in the absence of varied evidence, to charge the jury on a separate offense that was not listed in an indictment." *Kuehne*, 547 F.3d at 685. "[C]onstructive amendments are considered per se prejudicial and are reversible error." *Budd*, 496 F.3d at 521; *accord United States v. Bradley*, 917 F.3d 493, 502 (6th Cir. 2019); *Kuehne*, 547 F.3d at 683. Although this constructive amendment could invalidate Count 7, neither party has argued this issue. And because this issue does not implicate *Davis*, its assertion in this matter would be untimely.

crime of violence, to wit: assault with a deadly weapon, and did thereby cause bodily injury to said Lauretta Jacobs; in violation of Title 18, United States Code, Section 226l(a)(1).

D.E. 2 at 3.

The Court has obtained the written record of this case from the archives, and several documents will be filed in the electronic record. The written record makes clear that the jury instructions were submitted by the government.[3] The defense did not object to the issues described herein.[4] The government moved at the charge conference to correct some of its own errors in the submitted instructions, but the deficiencies described herein were not among them.[5]

Here is the lay of the land at this point. Jacobs's first § 924(c) conviction (Count 3) is straightforward. It can be upheld if his offense on Count 2 for interstate domestic violence under § 2261(a)(2) qualifies as a predicate crime of violence post-*Davis*. But Jacobs's second § 924(c) conviction (Count 7) is tricky. The Indictment charges the underlying crime as interstate travel to violate a protection order (§ 2262) but the jury instructions described the underlying crime as interstate domestic violence under § 2261(a)(1). Jacobs does not discuss this discrepancy in his motion. Nor did the Court of Appeals specify which crime supported each § 924(c) conviction. Jurors are presumed to follow the trial court's instructions. *United States v. Bradley*, 917 F.3d 493, 508 (6th Cir. 2019). The Court must presume the jury found, concerning Count 7, that Jacobs was guilty of using and carrying a firearm while committing the underlying crime of interstate domestic violence under § 2261(a)(1), as described in Count 5 and the instructions delivered.

---

[3] For the charge conference, *see* pages 183 to 193 of the trial transcript.

[4] The defense did object, unsuccessfully, to the presence of the § 924(c) charges in the jury instructions on the basis that the charges themselves were duplicative of the interstate domestic violence charges. *See* pages 188-89 of the trial transcript.

[5] *See* pages 183 to 187 of the trial transcript.

### IV.  Defining the Issue

To vacate his convictions on Counts 3 and 7, Jacobs must show that the two counts of interstate domestic violence (18 U.S.C. §§ 2261(a)(1) & (a)(2))—as these crimes were defined at the time—do not qualify as crimes of violence.  His entire motion thus hinges on a rather arcane question of law.  Now that the Supreme Court in *Davis* has invalidated the residual clause of 18 U.S.C. § 924(c)(3)(B), these interstate domestic violence crimes can only support the § 924(c) convictions if they satisfy the "use of force" clause (also known as the "elements clause").  That clause defines a "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."   18 U.S.C. § 924(c)(3)(A).

The government has supplied, from its archives, copies of 18 U.S.C. §§ 2261(a)(1) and (a)(2) as they existed when Jacobs committed the crimes.  D.E. 108-1 at 3-5.  The Court has confirmed their accuracy.   The government has also supplied portions of Jacobs's jury instructions from 1999.  D.E. 108-2.  The full proposed and final jury instructions obtained from the archives will be entered simultaneously with this Recommended Disposition as will partial trial transcripts.[6]

Jacobs's first interstate domestic violence charge under § 2262(a)(2) (Count 2) was defined in 1997 as follows:

> A person who causes a spouse or intimate partner to cross a State line or to enter or leave Indian country by force, coercion, duress, or fraud and, in the course or as a result of that conduct, intentionally commits a crime of violence and thereby causes bodily injury to the person's spouse or intimate partner, shall be punished as provided in subsection (b).

---

[6] The trial transcript exists in three parts:  (1) the testimony of Lauretta Jacobs, (2) the rest of the proof, the charge conference, and the government's closing arguments, and (3) the defense's closing arguments.  Other portions of the trial, including *voir dire*, opening statements, the reading of the instructions, and the taking of the verdict were apparently not transcribed.

18 U.S.C. § 2261(a)(2) (1997); D.E. 108-1 at 4. This version of the statute contains four elements:

> One, that the Defendant and the victim are spouses or intimate partners. Second, that the Defendant caused the victim to cross a state line by force, coercion, duress, or fraud. Third, that in the course of or as a result of that conduct, the Defendant intentionally committed a crime of violence upon the victim; and finally the fourth element, and that as a result of this crime of violence, the victim was bodily injured.

*United States v. Baggett*, 251 F.3d 1087, 1096 (6th Cir. 2001); *see also United States v. Page*, 167 F.3d 325, 336 (6th Cir. 1999) (Kennedy, J. dissenting). Changes to the statute have been minimal since Jacobs's conviction. The current version of the statute omits the "causes bodily injury" element.[7]  Both versions of the statute include an underlying "crime of violence" as an essential element.

Jacobs's second interstate domestic violence charge under § 2262(a)(1) (Count 5) was defined in 1997 as follows:

> A person who travels across a State line or enters or leaves Indian country with the intent to injure, harass, or intimidate that person's spouse or intimate partner, and who, in the course of or as a result of such travel, intentionally commits a crime of violence and thereby causes bodily injury to such spouse or intimate partner, shall be punished as provided in subsection (b).

---

[7] The statute in its current form states:

> A person who causes a spouse, intimate partner, or dating partner to travel in interstate or foreign commerce or to enter or leave Indian country by force, coercion, duress, or fraud, and who, in the course of, as a result of, or to facilitate such conduct or travel, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner, shall be punished as provided in subsection (b).

18 U.S.C. § 2261(a)(2). The Seventh Circuit has described current § 2261(a)(2) as containing three elements: (1) the defendant is a spouse, intimate partner, or dating partner of the victim; (2) the defendant caused the victim to travel in interstate commerce by force, coercion, duress, or fraud; and (3) the defendant committed a crime of violence against the victim in the course of, as a result of, or to facilitate the interstate travel. *United States v. Larsen*, 615 F.3d 780, 787 (7th Cir. 2010).

18 U.S.C. § 2261(a)(1) (1997); D.E. 108-1 at 3.[8]  Section 2261(a)(1) also includes an underlying crime of violence as an essential element.

As the government observes (D.E. 108 at 4), the phrase "crime of violence" found in §§ 2261(a)(1) and (a)(2) is defined by 18 U.S.C. § 16.  *Sessions v. Dimaya*, 138 S. Ct. 1204, 1241 (2018) (Roberts, C.J., dissenting).  Section 16's definition of "crime of violence" is identical to the definition in § 924(c)(3)(A).  Since its enactment in 1984, § 16 has defined "crime of violence" (absent the residual clause invalided by *Dimaya*) as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 16(a).

## V.  The Categorical Approach

Although the government helpfully supplied these 1997 statutory definitions as an attachment to its response brief, the government does not directly interact with them.  D.E. 108.  Instead, the government asserts that the elements of the predicate crimes "presumably are those set out in the jury instructions at trial."  *Id*. at 2-3.  The government then focuses its analysis on the jury instructions, not on the statutes themselves.

The *en banc* Sixth Circuit recently spoke at length about how to analyze whether a given crime is a "crime of violence."  *See United States v. Burris*, 912 F.3d 386 (6th Cir.), *cert.*

---

[8] The statute in its current form states:

> A person who travels in interstate or foreign commerce or enters or leaves Indian country or is present within the special maritime and territorial jurisdiction of the United States with the intent to kill, injure, harass, or intimidate a spouse, intimate partner, or dating partner, and who, in the course of or as a result of such travel or presence, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner, shall be punished as provided in subsection (b)

18 U.S.C. § 2261(a)(1).  The essential elements of the statute in its current form (without the "causes bodily injury" element) are that the defendant (1) traveled in interstate commerce (2) with the intent to kill, injure, harass, or intimidate (3) a spouse or intimate partner (4) and that, in the course of or as a result of such travel (5) the defendant committed or attempted to commit a crime of violence against that spouse or intimate partner.  *United States v. Utrera*, 259 F. App'x 724, 731 (6th Cir. 2008).

*denied*, 140 S. Ct. 90 (2019).  This issue has been heavily litigated in recent years, as the Supreme Court struck down the residual clauses in the Armed Career Criminal Act,[9] in 18 U.S.C. § 16(b),[10] and most recently in 18 U.S.C. § 924(c).[11]  Back in 1990, well before Jacobs's conviction at issue, the Supreme Court recognized that this analysis "always has embodied a categorical approach to the designation of predicate offenses."  *Taylor v. United States*, 495 U.S. 575, 588 (1990); *see also United States v. Davis*, 139 S. Ct. 2319, 2326 (2019).

The Sixth Circuit in *Burris* acknowledged that this area of law is "complicated" and "a time-consuming legal tangle."  *Burris*, 912 F.3d at 391.  The "categorical approach" means that a Court may not consider the particular facts of the predicate crime.  Instead, courts may look only to the statutory definitions—the elements—of the predicate crime.  *Id.* at 392.

> The question . . . in the elements-clause context is whether every defendant convicted of that state or federal felony *must have* used, attempted to use, or threatened to use physical force against the person of another *in order to have been convicted*, not whether the particular defendant *actually* used, attempted to use, or threatened to use physical force against the person of another *in that particular case*.  If the answer to that question is "no," and the statute forming the basis for the defendant's previous state or federal felony conviction criminalizes conduct that does not involve "the use, attempted use, or threatened use of physical force against the person of another," then a conviction under that statute may not serve as a violent-felony predicate under the elements clause, assuming that statute is an "'indivisible' statute—*i.e.*, one not containing alternative elements."  [T]his has been true since at least 1990.

*Id.* at 392-93 (citations omitted).

However, some statutes are "divisible."  They set out one or more elements of the offense in the alternative, thereby defining multiple crimes.  *Burris*, 912 F.3d at 393.

If at least one of the statute's alternative sets of elements categorically matches the [use-of-force clause] and at least one of the sets of elements does not, the

---

[9] *Johnson v. United States*, 135 S. Ct. 2551 (2015).

[10] *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).

[11] *United States v. Davis*, 139 S. Ct. 2319 (2019).

"modified categorical approach" allows sentencing courts "to consult a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." This limited class of documents—so-called "*Shepard* documents"—includes "the indictment, jury instructions, or plea agreement and colloquy." Once the federal sentencing court has determined under which alternative set of elements the defendant was convicted, it may then "do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case)" with the [use-of-force] clause. But the modified categorical approach applies only to statutes that list multiple alternative sets of *elements*, not statutes that list multiple alternative factual *means* of committing a single element.

*Id*. (citations omitted).

Accordingly, courts must conduct two analyses:

One is an overbreadth analysis to determine whether the statute in question is too broad to categorically qualify as a violent-felony predicate because it criminalizes more conduct than is described in the [use-of-force clause]. The other is a divisibility analysis to determine whether the statute in question is divisible because it sets out multiple separate crimes and if so, whether any of those separate crimes qualifies as a violent-felony predicate under the [use-of-force clause].

*Burris*, 912 F.3d at 393.

The Court in *Burris* ultimately determined that "felonious assault" and "aggravated assault" under Ohio law were not crimes of violence under this categorical approach because, under the statutory definitions, they can be committed by inflicting *mental* harm. "[A] person can at least theoretically knowingly cause certain serious mental harms without using, attempting to use, or threatening to use physical force against the person of another." *Burris*, 912 F.3d at 397. The *Burris* Court looked to Ohio case law and determined that there was a realistic—not just theoretical—probability that a person could be convicted of felonious or aggravated assault without causing physical injury. *Id*. at 398.[12] For example, the court in one Ohio sexual abuse

---

[12]    The Supreme Court has cautioned us . . . not to "apply legal imagination to the state offense; there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the conduct described in the [use-of-force clause]. We therefore look to state law to determine whether there is a realistic probability that Ohio would apply its felonious-

case found that mental harm was inflicted by the defendant's failure to act when they had a duty to protect. *Id*. at 398-99. Another case found mental harm that resulted from consensual sexual encounters (by a priest) without "any physical force" involved. *Id*. at 399.

## VI. Analysis

Against this background, the Court now turns its attention to Jacobs's convictions for interstate domestic violence under 18 U.S.C. §§ 2261(a)(1) and (a)(2). For purposes of the present motion, these two statutes warrant the same analysis. At the time of the events in this case, both contained an identical phrase requiring that the defendant "intentionally commits a crime of violence and thereby causes bodily injury." The "crime of violence" element of §§ 2261(a)(1) and (a)(2) renders the statutes divisible because it creates, via the predicate crime, various ways of committing interstate domestic violence that amount to separate crimes, *i.e.*, separate sets of elements rather than separate means. *United States v. Faulls*, 821 F.3d 502, 514-15 (4th Cir. 2016). And there exists a realistic possibility that the predicate crime might not satisfy the use-of-force clause. *See, e.g.*, *Bailey v. United States*, No. 2:16-CV-6190, 2019 WL 4058599 (S.D.W. Va. Aug. 28, 2019). Accordingly, it is appropriate for the Court to evaluate the *Shepard* documents, such as the Indictment and jury instructions. *Burris*, 912 F.3d at 393.

This case presents a Russian nesting doll of predicate crimes. Jacobs's firearm-in-furtherance convictions under § 924(c) both require a predicate "crime of violence." The predicate crimes of violence underlying the § 924(c) convictions are both violations of § 2261(a), which itself requires a predicate "crime of violence." The Court can conduct a proper categorical analysis of Jacobs's § 2261(a) convictions only once the predicate crimes of violence and their

---

assault and aggravated-assault statutes to conduct that falls outside of the conduct described in the [use-of-force clause]. In doing so, we are bound by the Ohio Supreme Court's interpretation of its criminal law. "[A]fter a state supreme court's decisions, 'intermediate state appellate court decisions constitute the next best indicia of what state law is.'"

*Burris*, 912 F.3d at 398 (citations omitted).

elements are identified. *Faulls*, 821 F.3d at 514-15 (explaining that determining the validity of a § 2261(a) conviction depends upon the knowing the elements of the alleged predicate crime of violence).

### A. The Underlying State Law Predicate Crimes are Undefined

For Count 2, the Indictment identifies the predicate "crime of violence" as "assault and rape." D.E. 2 at 1. Count 2 alleges that Jacobs caused his wife "to cross a state line between Kentucky and Tennessee." *Id*. It is not obvious from the Indictment whether the "assault and rape" mentioned in Count 2 occurred in Tennessee or Kentucky. It is thus unknown which state's statutory definitions would apply. As a legal matter, the § 2261 predicate crime can occur either before or after the state line is crossed, provided the predicate crime and the border crossing are part of the same course of conduct. *See United States v. Page*, 167 F.3d 325, 327-28, 336 (6th Cir. 1999) (Moore, J., concurring).

For Count 5, the Indictment identifies the predicate "crime of violence" as "assault with a deadly weapon." Count 5 alleges that Jacobs caused his wife "to cross a state line between Kentucky and Indiana." *Id*. It is not obvious from the Indictment whether the "assault with a deadly weapon" occurred in Kentucky or Indiana. So again, it is not clear from the record which state's statutory definition would apply.

Thus, from the Indictment alone there is ambiguity regarding the alleged crimes supporting the "crime of violence" element of Jacobs's § 2261(a) convictions. Were the "assault and rape" committed under Tennessee law or Kentucky law? Was the "assault with a deadly weapon" committed under Kentucky law or Indiana law? The Court must look to another one of the *Shepard* documents in this case—the jury instructions.

14

Here, the case becomes even more complicated.  Jacobs's jury instructions contain no reference at all to the alleged crime of violence underlying Count 2 and merely names the alleged crime of violence underlying Count 5.  No elements for any of these state predicate crimes are included in the jury instructions.  As the government notes, as to these predicate crimes, "there are no statutory elements [in the jury instructions] to examine."  D.E. 108 at 4.  This is problematic.  The predicate crime itself is an essential element of a § 2261(a) charge.

### B.  Count 2—the Predicate Crime for Count 3—Was Lacking an Essential Element

The jury instruction for Count 2 was as follows, in its entirety:

Title 18, United States Code, Section 2261(a) (2), makes it a crime for a person to cause the person's spouse to cross a state line by force, coercion, duress, or fraud and in the course of or as a result of that conduct, to intentionally commit a crime of violence which thereby causes bodily injury to the person's spouse.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

**First:**  That on or about the 22nd day of February, 1997, the defendant caused Lauretta Jacobs to cross the state line from Kentucky to Tennesse[e], as alleged;

**Second:**  That at the time, the said Lauretta Jacobs was the wife, or former wife of the defendant;

**Third:**  That in so doing, the defendant used force, coercion, duress, or fraud to cause her to cross state lines;

**Fourth:**  That in the course of such conduct, the defendant intentionally engaged in an act of violence causing bodily injury to Lauretta Jacobs, as alleged.

As used here "bodily injury" means an act done that results in physical injury or sexual abuse.

Sexual abuse is any non-consensual sexual contact, regardless of whether the defendant is married to the victim.

D.E. 108-2 at 4.

15

In breaking down the elements of Count 2, the jury instruction changed "crime of violence" to "an act of violence." D.E. 108-2 at 4. This is a variation from the statute, which requires a predicate *crime*. *See Faulls*, 821 F.3d at 510 (listing the elements of current § 2261(a)(2) and noting the Constitution requires a jury to find, beyond a reasonable doubt, all elements of the underlying criminal offense). The elements of a predicate crime under this statute must be proven to the jury. *See id*. at 515 (noting that "the underlying crime of violence—aggravated sexual abuse—and its elements were put to the jury and found unanimously beyond a reasonable doubt"); *see also Page*, 167 F.3d at 332 n.5 (Moore, J., concurring) ("The jury was given the Ohio definition of assault . . . [but] because the jury was not instructed on the elements of menacing, I do not consider [menacing to be] a predicate crime on which the jury could have based its [§ 2261(a)(2)] conviction.").

An essential element was therefore omitted from the jury instruction on Count 2. "[T]o be convicted of interstate domestic violence, the defendant must commit an underlying crime of violence against a spouse or intimate-partner victim." *Faulls*, 821 F.3d at 513. That omitted element of Count 2 is the very element this Court must analyze to determine whether Count 2 involved the use of force to satisfy § 924(c)(3)(A).

Because not every element of Count 2 was presented to the jury, it follows that Count 3, the first § 924(c) charge, is invalid. "While it is not necessary for the government to *charge* a defendant with the underlying [predicate] crime in a § 924(c)(1) prosecution, it is, of course, necessary that the government prove beyond a reasonable doubt all of the elements of § 924(c), one of which is that the defendant committed the underlying crime." *United States v. Nelson*, 27 F.3d 199, 201 (6th Cir. 1994*)* (emphasis added). This underlying crime of violence would have ostensibly been the "assault and rape" mentioned in Count 2 of the Indictment, but that was not

16

specified in the jury instructions. *United States v. Nelson*, 27 F.3d 199 (6th Cir. 1994), is precisely on point and compels a finding of clear error when the jury was not instructed on every element of the alleged predicate crime.

> There are few tenets more basic to our system than the rule that the prosecution has the burden of proving every element of a crime beyond a reasonable doubt. Accordingly, when a trial judge omits an element of an offense necessary to find the defendant guilty from the jury instructions, the omission is plain error.

> Clearly the omission from the jury instructions of an element of the offense affected [the defendant's] substantial rights and seriously affected the fairness, integrity or public reputation of these judicial proceedings. . . . [T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*Id.* (citations omitted).

The trial court's error in *Nelson* was failing to instruct on the essential elements of the underlying drug trafficking crime. The instructions specified possession of cocaine with the intent to distribute it, but were "completely devoid of any instruction as to what the jury had to find in order to conclude that Nelson committed the drug trafficking crime[.]" *Id.* at 202. Jacobs's jury was not instructed on either the specific underlying crime of violence or its elements that Jacobs allegedly committed with respect to Count 3. The *Nelson* court reversed the conviction. *Id.* at 203. Because the jury was not instructed as to the elements of the predicate crime of violence, the Court cannot find that a predicate crime of violence satisfying the use of force clause exists by looking to the *Shepard* documents and Jacobs is entitled to have the conviction on Count 3 vacated.

The decision in *Bailey v. United States* also illuminates this point in relation to Jacobs's interstate domestic violence charges. In that case, the court vacated an interstate domestic violence conviction on the basis that the predicate crime did not satisfy the use-of-force clause.

*Bailey v. United States*, No. 2:16-CV-6190, 2019 WL 4058599 (S.D.W. Va. Aug. 28, 2019). The jury instructions identified the predicate crime as "kidnaping and aggravated assault." *Id.* at *1. The petitioner was convicted of federal kidnapping in the same case. The *Bailey* court vacated the interstate domestic violence conviction on the basis that kidnapping did not satisfy the use-of-force clause. *Id.* at *4. The government argued in the alternative that aggravated assault could serve as the predicate crime and would satisfy the use-of-force clause. *Id.* at *5. The court rejected this argument. Although the jury was instructed that aggravated assault was a crime of violence, the jury was "not instructed on the elements thereof." *Id.* Accordingly, because the jury found only the elements of kidnapping, only kidnapping could be the operative predicate "crime of violence." *Id.* This case is similar. Although the predicate crime at the center of the nesting doll related to Counts 2 and 3 is allegedly "assault and rape," the jury was not instructed on the elements of assault or rape.

Of course, the failure to validly *convict* Jacobs of the § 924(c) predicate crime (here, interstate domestic violence) does not automatically mean that the § 924(c) charge in Count 3 is invalid. A § 924(c) conviction can stand even when the defendant is not convicted of the predicate crime. *United States v. Smith*, 182 F.3d 452, 457-58 (6th Cir. 1999). Nevertheless, to support a § 924(c) charge, the jury must find *the elements* of the predicate crime beyond a reasonable doubt (even if the predicate crime is not charged as a separate offense). As the Court noted in *Smith*, the Court in *Nelson* reversed a § 924(c) conviction when "the jury instructions left out an element of the uncharged predicate offense." *Smith*, 182 F.3d at 457. The *Nelson* jury "might not have convicted if it had known the actual elements." *Id.* at 458. Although *conviction* on the predicate offense is not necessary, "the fact of the [predicate] offense" is a necessary finding for the jury. *Id.* (quoting *Nelson*, 27 F.3d at 200). Here the Court cannot even

18

identify the specific predicate crime of violence within the Count 2 interstate domestic violence charge to assess whether it was found by the jury.

### C.  Count 5—the Predicate Crime for Count 7—Was Also Lacking an Essential Element

Count 5 faces a similar problem as Count 2.  The jury instruction for Count 5 is as follows, in its entirety:

> Title 18, United States Code, Section 2261(a)(1), makes it unlawful to travel across state lines with the intent to injure or harass one's spouse and thereafter cause bodily injury to said spouse.  For you to find the defendant guilty of this offense, you must find each of the following elements proven beyond a reasonable doubt.
>
> **First:**  That on or about the 27th day of April, 1997, the defendant traveled across state lines from Kentucky to Indiana;
>
> **Second:**  That at the time, his intent was to injure, harass or intimidate his wife, or ex-wife Lauretta Jacobs;
>
> **Third:**  That in the course of, or as a result of such travel, the Defendant committed a crime of violence, that being assault with a deadly weapon;
>
> **Fourth:**  That as a result of such crime of violence, Lauretta Jacobs suffered bodily injury.
>
> As used here "bodily injury" means an act done that results in physical injury or sexual abuse.

D.E. 108-2 at 7.

Unlike the instruction for Count 2, Count 5's instruction does identify the predicate crime of violence—"assault with a deadly weapon."  But the jury was not instructed on the elements of assault with a deadly weapon.  This is exactly what occurred in *Nelson*.  As previously noted, it is not clear from the Indictment (or jury instructions) whether this assault crime occurred under Kentucky law or Indiana law so as to examine Count 5's "crime of violence" element.[13]  For the

---

[13] The trial court did instruct the jury (concerning the § 924(c) charges) that Counts 2 and 5 were crimes of violence. D.E. 108-2 at 5, 8.  But this is tautological and does not supplant the required application of the modified categorical approach.

same reasons discussed above regarding Count 2, Jacobs's interstate domestic violence conviction on Count 5 is invalid because an essential element (comprised of the elements of the predicate crime) was omitted from the jury instructions. This problem in turn undermines the validity of Jacobs's second § 924(c) conviction—Count 7.

*Nelson* applies and invalidates the conviction on Count 7. *Bailey* is also instructive as to the Count 7 predicate in Count 5. *Bailey*, 2019 WL 4058599. Just as Bailey's jury was not instructed on the elements of aggravated assault, Jacobs's jury was not instructed on the elements of "assault and rape" and "assault with a deadly weapon." So, this Court cannot identify from the *Shepard* documents the particular state crime of violence nested within Count 5 to determine whether a valid crime of violence supports the Count 7 conviction.

### VII.  Related Issues and Potential Objections

The Court has concluded that Jacobs's § 924(c) convictions fail post-*Davis*. An essential element of § 924(c) is the commission of the underlying crime of violence. Here, the underlying crime of violence—interstate domestic violence—itself contains as a necessary element that another predicate crime of violence was committed. The jury instructions omitted the elements of the alleged predicate crimes of violence. This means that the Court is unable to analyze all of the essential elements as required by the categorical approach to determine whether the crimes necessarily satisfy the use-of-force clause. This warrants relief because the Court cannot find that valid predicates support the § 924(c) convictions.

The Court now considers a few additional issues and potential objections.

The kidnapping conviction would not save Jacobs's § 924(c) convictions. Like Bailey, Jacobs was convicted of federal kidnapping in the same case. *Bailey*, 2019 WL 4058599, at *1-2, *4. Federal kidnapping is not a crime of violence. *Knight v. United States*, 936 F.3d 495, 497

(6th Cir. 2019).   Accordingly, Jacobs's kidnapping conviction could not be a valid predicate crime for either of his § 2261 convictions or either of his § 924(c) convictions.

The government argues that the jury instructions do allow for a modified categorical analysis with, unsurprisingly, a result in its favor.   It asks the Court to focus on the phrase "bodily injury" in § 2261 and its definition in the instruction on both Counts 5 and 7 of "an act done that results in physical injury or sexual abuse," either of which it contends requires the use of force.   D.E. 108 at 5-6.   But it matters not whether "bodily injury" satisfies the use-of-force clause because the jury was not instructed on all essential elements of the § 2261 charges.   There is no valid predicate crime for the § 924(c) convictions to rest upon that can be identified at this point.

In any event, the government has identified no case which holds that interstate domestic violence under § 2261(a)(1) or (a)(2) qualifies as a crime of violence purely by virtue of the "bodily injury" clause.   As Jacobs's jury was correctly instructed, for purposes of § 2261, "bodily injury" is defined as an act "that results in physical injury or sexual abuse."   18 U.S.C. § 2266 (1999); D.E. 108-2 at 4, 7.   The government admits that, under this statutory scheme, "the issue of whether there is bodily injury presupposes that a crime of violence has occurred."   D.E. 108 at 7.   Even though the jury found that Jacobs's wife "suffered bodily injury," relying on that isolated finding is inconsistent with the categorical approach that the Court must employ to assess whether a crime satisfies the use-of-force clause.[14]

It certainly appeals to common sense to say that force must have been used when "bodily injury" occurred.    And the government may object by claiming that the uncertainty driven by

---

[14] The Court has found one case that leans on the "bodily injury" element to find that a § 2261(a) conviction satisfied the use-of-force clause.   *Dade v. United States*, No. 4:01-CR-196-BLW, 2019 WL 361587, at *3 (D. Idaho Jan. 29, 2019), *appeal dismissed*, No. 19-35168, 2019 WL 2314554 (9th Cir. Apr. 23, 2019).   *Dade* is of course not binding on this Court.   And the *Dade* opinion explicitly noted that the jury found the elements of the predicate crime(s).

such a dated record compels reliance upon what is established instead of the unanswered questions that prevent proper application of the categorical approach. But, even if the finding of "bodily injury" is, in isolation, persuasive as to whether force was actually applied, the government has not identified, except in a generic sense, the particular state crimes supporting the § 2261 convictions. Should the Court allow convictions supporting a 300-month sentence to stand when the elements of the particular crimes of conviction cannot be identified to assess whether they are crimes of violence? Of course not.

Jacobs did not argue in his § 2255 motion that his § 2261(a) convictions were invalid. His motion targets only his § 924(c) convictions. But the elements of the § 2261(a) convictions are critical components of the § 924(c) analysis. Jacobs's § 924(c) convictions are flawed because not all elements of their predicate crimes—interstate domestic violence—were included in the instructions. So, is Jacobs entitled to any relief concerning the 2261(a) convictions? No, because these convictions are not invalid by virtue of the *Davis* decision. The *Davis* holding applies only to § 924(c). If Jacobs's § 2255 motion is generously construed as attacking the validity of his § 2261 convictions, those convictions could not be vacated because that claim would be untimely. Each claim in a § 2255 motion must individually satisfy the one-year statute of limitations. "Sixth Circuit precedent dictates . . . that courts determine the beginning of the one-year statute of limitations period based on the content of the prisoner's claim." *Bachman v. Bagley*, 487 F.3d 979, 984 (6th Cir. 2007). "[T]he timeliness of each claim asserted in [a § 2255 motion] must be considered independently." *Davis v. United States*, 817 F.3d 319, 328 (7th Cir. 2016).

Jacobs's convictions were upheld on appeal in February 2001. *United States v. Jacobs*, 244 F.3d 503 (6th Cir. 2001). Any claims attacking his convictions that are not based on *Davis*

22

come 18 years too late.  When it comes to the § 2261 convictions, the deadline of 28 U.S.C. § 2255(f)(1) applies, and the Court may not grant relief.

## VIII.  Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that Jacobs's 28 U.S.C. § 2255 motion (D.E. 99, 102, 106) be **GRANTED** and that his convictions on Counts 3 and 7 under 18 U.S.C. § 924(c) be **VACATED.**

Due to the obvious complexity of this case, the Court will appoint counsel to assist Jacobs with respect to objections and to represent Jacobs in any additional proceedings in this District.  A court may appoint counsel for an indigent habeas petitioner when "the interests of justice so require." 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B).  In exercising this discretion, courts "should consider the legal complexity of the case, the factual complexity of the case, and the petitioner's ability to investigate and present his claims, along with any other relevant factors." *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994).  This is a highly legally complex § 2255 petition, involving the interplay between several statutes and challenging analyses required by complicated Supreme Court caselaw.  The Court will further assist the parties by ordering several relevant documents to be filed in the record.

**IT IS HEREBY ORDERED THAT:**

(1)    Having consulted with him concerning this matter and upon his willingness to serve as counsel, Hon. **Patrick F. Nash** is hereby **APPOINTED** to represent Jacobs under 18 U.S.C. § 3006A(a)(2)(B) for further proceedings in this District, including asserting and/or responding to any objections to this Recommended Disposition.  The Clerk **SHALL** serve this Recommended Disposition upon Mr. Nash via CM/ECF.

(2)     The Clerk **SHALL FILE** in the electronic record the following documents:

     (a)     The government's proposed jury instructions.

     (b)     The Court's final jury instructions.

     (c)     The transcript of Mrs. Jacobs's testimony.

     (d)     The partial trial transcript.

     (e)     The transcript of the defense's closing arguments.

This case does not warrant an evidentiary hearing. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). The issue in this matter is purely a legal one, with no factual issues in dispute. And the Court recommends granting relief on the written record alone.

Any objection to or argument against granting Jacobs's § 2255 motion must be asserted **before the District Judge** in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 13th day of April, 2020.



**Signed By:**

_**Hanly A. Ingram**_

**United States Magistrate Judge**

24