UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at PIKEVILLE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 7:98-CR-02-JMH-HAI |
| v. | ) | |
| | ) | **MEMORANDUM** |
| ELISHA JACOBS, | ) | **OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*

To use the analogies that have accumulated in this case, Russian nesting dolls and onions consist of layers that, if peeled back far enough, lead to a certain and inevitable end. But if peeled too deeply, as the government alleges has happened in the legal analysis of Elisha Jacobs' petition to vacate his sentence, it becomes easy to forget what it was in its original form.

This case is full of layers. There are multiple levels of predicate crimes making up Jacobs' 1999 convictions. There are potential errors and oversights now apparent in the jury instructions and indictment. There are multiple tests and methods of statutory interpretation to be employed. United States Magistrate Judge Hanly A. Ingram's nesting-dolls analogy ultimately led to the conclusion that Jacobs' convictions under 18 U.S.C. § 924(c) may not stand. This Court disagrees.

Jacobs filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence by a person in federal custody. [DEs 99, 102, 106]. Specifically, he challenges two convictions under 18 U.S.C. § 924(c), a federal statute that creates a separate offense when a defendant uses a firearm while committing certain other crimes. The "other crimes" in this case are interstate domestic violence pursuant to 1996 versions of 18 U.S.C. §§ 2261(a)(1) and (a)(2). The core question before this Court is whether Jacobs' two convictions under that statute qualify as crimes of violence following the United States Supreme Court's holding in *United States v. Davis*, ___ U.S. ___, 139 S. Ct. 2319 (2019). In that case, the Supreme Court held that one of the two ways to define a "crime of violence" for purposes of § 924(c)—the "residual clause"—was unconstitutionally vague. *Id.* The definition that still stands—the so-called "elements clause"—requires federal courts to find that the predicate crime had, as an element, "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

Magistrate Judge Ingram conducted a careful and lengthy analysis of § 924(c) and the underlying predicate crimes, finding that Jacobs' motion should be granted. The undersigned agrees with Magistrate Judge Ingram's recognition that "this is a decision of gravity and may mean Jacobs has been imprisoned without a basis since the expiration of his initial 70-month term." [DE 111 at 1].

The government, in its objection to Magistrate Judge Ingram's recommendation, criticizes the report's analysis and application of recent decisions to Jacobs' case. [DE 112]. Jacobs, through counsel, addresses each of the government's arguments. [DE 115].

In the process of making a recommendation, Magistrate Judge Ingram unearthed concerning potential errors in the jury instructions given at trial. It is now evident that Jacobs' jury was, at the very least, not fully instructed on an element of the predicate § 2261 crime. This is where Magistrate Judge Ingram's and the governments analogies come into play: § 924 charges must be predicated on crimes of violence. The predicates charged by the United States in this case, two violations of the Violence Against Women Act ("VAWA"), each require the government to demonstrate that the defendant committed an underlying crime of violence, too. 18 U.S.C. § 2261. Magistrate Judge Ingram, understandably, thought it unjust to uphold a § 924(c) conviction when the underlying crime may have been inadequately proven to the jury.

But after wading through and distilling the issue central to Jacobs' § 2255 petition, this Court finds that his request must be **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jacobs was convicted on April 16, 1999 on all seven counts in the indictment against him following a jury trial before the undersigned. [DE 54 at 1]. The indictment read as follows:

3

Count 1: Kidnapping, 18 U.S.C. § 1201
Count 2: Interstate domestic violence, 18 U.S.C. §
        2261(a)(2)
Count 3: Use of a deadly weapon during a crime of
        violence, 18 U.S.C. 924(c)
Count 4: Interstate violation of a protective order,
        18 U.S.C. § 2262
Count 5: Interstate domestic violence, 18 U.S.C. §
        2261(a)(1)
Count 6: Possession of a firearm while subject to a
        court order, 18 U.S.C. § 922(g)
Count 7: Use of a deadly weapon during a crime of
        violence, 18 U.S.C. § 924(c)

[DE 102 at 1; DE 2]. At sentencing, Jacobs' total offense level was categorized at 27 with a criminal history category of I. [*Id.* at 9]. He was sentenced to seventy months on Counts 1, 2, 4, 5, and 6, to run concurrently with a sixty-month sentence imposed on Count 3 and 240 months on Count 7. [DE 54 at 4]. The United States Court of Appeals for the Sixth Circuit upheld his convictions and sentence in 2001. *United States v. Jacobs*, 244 F.3d 503 (6th Cir. 2001).[1]

On November 5, 2019, the Court received a *pro se* motion from Jacobs pursuant to 28 U.S.C. § 2255, seeking to vacate his § 924(c) convictions on Counts 3 and 7. [DE 99]. Because his initial motion was not signed under penalty of perjury and did not substantially

---

[1] Jacobs claimed that this Court erred in refusing to sever the counts in the indictment into two trials; that the prosecutor committed misconduct that denied him a fair trial; that the trial violated double jeopardy; and that he was improperly sentenced to consecutive minimum sentences on the § 924 counts. *Jacobs*, 244 F.3d at 505. The Court of Appeals affirmed the judgment in its entirety.

follow the § 2255 form, Jacobs was ordered to submit a corrected motion. [DE 101]. The Court received his complete § 2255 form on December 2, 2019. [DE 102]. He asked that his original motion, memorandum, and the subsequently filed form be considered together. [DEs 105, 106]. Magistrate Judge Ingram considered all of Jacobs' filings related to his § 2255 motion. [DE 111 at 3]. The government responded in opposition to Jacobs' § 2255 motion on December 27, 2019 [DE 108] and the Court received his reply on January 30, 2020. [DE 110].

Magistrate Judge Ingram filed a report and recommendation on April 13, 2020. [DE 111]. He recommended that Jacobs' petition be granted and, because of the complexity of the legal issues involved, ordered that counsel should be appointed to represent him pursuant to 18 U.S.C. § 3006A(a)(2)(B) in further proceedings. [*Id.*]. The United States filed objections to the report and recommendation on April 22, 2020 [DE 112] and Jacobs filed a response to the report and the objections on May 8, 2020. [DE 115]. Thus, the matter is ripe for review by this Court.

## II. LEGAL STANDARD

A federal prisoner may obtain post-conviction relief from his sentence if it (1) violates the Constitution or federal law, (2) if the federal court lacked jurisdiction to impose such a sentence, or (3) if the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97

(6th Cir. 2003) (internal citations omitted). A defendant alleging a constitutional error must establish that it is one of "constitutional magnitude" and show that it had a "substantial and injurious effect or influence on the proceedings" to get § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 636-39 (1993)). If the defendant alleges a non-constitutional error, he or she must prove that the error constituted a central defect that "inherently results in a complete miscarriage of justice" or an error so egregious that it is essentially a violation of due process. *United States v. Ferguson*, 918 F.2d 617, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428(1968)).

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district court may refer dispositive matters, including a motion to vacate a sentence under § 2255, to a magistrate judge to prepare a report and recommendation as to the motion's disposition. *See also* Fed. R. Crim. P. 59(b)(1). Parties have fourteen days after being served with the report and recommendation to specifically object in writing to the findings and recommendations. *Id.* at (b)(2). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). The referring district court judge must review the specific objections *de novo* and "accept, reject, or modify the

recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions. Fed. R. Crim. P. 59(b)(3).

Although Jacobs now has an attorney, the Court still recognizes that his initial memorandum and § 2255 motion were written when he was proceeding *pro se*. Thus, the Court construes his *pro se* motions and support more leniently than if they had been prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

### III. DISCUSSION

The issue in this case is clear: to vacate Jacobs' convictions on Counts 3 and 7, the two counts of interstate domestic violence they are tied to must not qualify as a "crime of violence" under the elements clause of § 924(c)(3)(A). Though the question seems to be straightforward, it has become increasingly convoluted because of the now-apparent blunders in how the case was prosecuted. This Court attempts to distill and concisely apply the legal questions that encompass this case.

### A. Timeliness of Jacobs' § 2255 petition

Jacobs' motion is timely under § 2255(f)(3), which provides a one-year limitation that begins to run on the date that the right was initially recognized by the Supreme Court, as long as the Supreme Court also recognizes that it is retroactively applicable on collateral review.

Although the report and recommendation noted that the government does not oppose the fact that *Davis* is retroactive and stated that the Sixth Circuit had yet to decide the issue, the Court of Appeals did directly address *Davis's* retroactivity in *In re Franklin*, 950 F.3d 909 (6th Cir. 2020)(per curiam). In that case, the Sixth Circuit held that *Welch v. United States*, 136 S. Ct. 1257, 1264-65 (2016), established the retroactivity of *Davis* because the case altered the range of conduct that the law punishes. Though *Welch* addressed retroactivity in light of the Armed Career Criminal Act ("ACCA"), "[s]o too in *Davis*, where the Court narrowed § 924(c)(3) by concluding that its [residual] clause was unconstitutional." *In re Franklin*,950 F.3d at 911 (citing *Welch*, 139 S. Ct. at 2336). Thus, *Davis* is retroactive and may be used to challenge a conviction under § 2255, within the allowed limitation period.

**B. Discrepancies between the indictment and conviction**

The first § 924(c) charge from which Jacobs seeks relief was based on the predicate crime of interstate domestic violence in Count 3. In the indictment, the underlying crime of violence alleged for Count 7 is interstate travel to violate a protection order,[2] but the jury instructions describe the underlying crime as

---

[2] As Magistrate Judge Ingram pointed out, it appears that the indictment was constructively amended, meaning that the terms of the indictment were effectively altered by the presentation of evidence and jury instructions, modifying the essential elements

interstate domestic violence under § 2261(a)(1). The report and recommendation states that the Court must presume that the jury found, concerning Count 7, that Jacobs was guilty of using and carrying a firearm while committing the underlying crime of interstate domestic violence described in Count 5 of the indictment. [DE 111 at 7 (citing *United States v. Bradley*, 917 F.3d 493, 508 (6th Cir. 2019) (jurors are presumed to follow the trial court's instructions))]. The Judgment in Jacobs' case also indicates that he was convicted by the jury on both § 2261(a)(1) and (a)(2). [DE 54].

The government does not contest this factual finding in its objection, and neither does Jacobs in his reply. After a review of the record, the undersigned finds this to be a reasonable interpretation and conclusion considering the discrepancies between the documents in the record.

---

of the offense. *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007(internal citations omitted). Thus, it appears that Jacobs may have been convicted of a crime different from that presented in the indictment, even beyond the mere typographical flaws. If this is true, then as Magistrate Judge Ingram pointed out, the Count 7 conviction may have been made in error. But because it does not implicate *Davis,* that issue would be untimely to address in this opinion. Also, it is noted that, while the Court later finds that the reference to jury instructions is unnecessary for determining if the VAWA convictions are predicate crimes of violence, it is necessary here to review the instructions and find out what the predicate crimes are.

## C. Relevant statutory provisions

Counts 3 and 7 under 18 U.S.C. § 924(c) gave Jacobs "long prison sentences for … [using] a firearm in connection with certain other federal crimes." *Davis*, 139 S. Ct. at 2323. When a defendant carries a firearm "during and in relation to" or "in furtherance of" any federal "crime of violence or drug trafficking crime," he or she can be charged with heightened penalties. 18 U.S.C. § 924(c)(1)(A). If a defendant is charged under the "crime of violence" provision, the crime must be one for which the person could be prosecuted in a court of the United States.

"Crimes of violence" are defined in two subparts: the "elements clause" of § 924(c)(3)(A) and the "residual clause" of § 924(c)(3)(B). The elements clause states that a "crime of violence" has "*as an element*, the use, attempted use, or threatened use of physical force against the person or property of another." *Id*. at (c)(3)(A) (emphasis added). The residual clause stated that a "crime of violence" is one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id*. at (c)(3)(B). This latter section—the residual clause—was found by the Supreme Court to be unconstitutionally vague. *Davis*, 139 S. Ct. at 2323-24.

The *Davis* case forms the basis of Jacobs' § 2255 petition. He argues that because the residual clause was found to be

unconstitutional, the government must have adequately convicted him of a crime of violence under the elements clause for his conviction to stand. *See* [DE 110].

The government provided the two statutes defining the crimes Jacobs was convicted of and formed the basis of his § 924(c) convictions, as they existed in 1999. [DE 108-1]. Jacobs' first interstate domestic violence charge fell under 18 U.S.C. § 2261(a)(2), which stated as follows:

> A person who causes a spouse or intimate partner to cross a State line or to enter or leave Indian country by force, coercion, duress, or fraud and, in the course or as a result of that conduct, intentionally commits a crime of violence and thereby causes bodily injury to the person's spouse or intimate partner, shall be punished as provided in subsection (b).

His second interstate domestic charge was under 18 U.S.C. § 2261(a)(1), which stated:

> A person who travels across a State line or enters or leaves Indian country with the intent to injure, harass, or intimidate that person's spouse or intimate partner, and who, in the course of or as a result of such travel, intentionally commits a crime of violence and thereby causes bodily injury to such spouse or intimate partner, shall be punished as provided in subsection (b).

It is clear from the jury instructions and the government's briefings that Jacobs was not convicted under the residual clause of § 924(c). Thus, the question in this case is whether these two statutory provisions have, as an element, "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

11

## D. **The categorical v. modified categorical approach**

There is much discussion in the parties' briefings and the report and recommendation about whether the judicially created "categorical" or "modified categorical" approach should be used to determine if interstate domestic violence is a crime of violence. As the Sixth Circuit and Supreme Court have recently noted, these two different approaches can be a "time-consuming legal tangle" and, frankly, "a mess." *United States v. Burris*, 912 F.3d 386, 391 (6th Cir. 2019)(quoting *Mathis v. United States*, ___ U.S. ___, 136 S. Ct. 2243, 2264 (2016) (Breyer, J. and Alito, J. dissenting)).

Courts in the last decade have wrestled with defining felony predicates under not only the elements clause of § 924(c)(3)(A), but in similar provisions of the ACCA and in 18 U.S.C. § 16(b). *See Sessions v. Dimaya*, ___ U.S. ___, 138 S. Ct. 1204 (2018) (residual clause of the federal criminal code's definition of a "crime of violence" as incorporated into the Immigration and Nationality Act's definition of an "aggravated felony" was impermissibly vague in violation of due process); *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015) (holding that the residual clause under the ACCA violates the Constitution's guarantee of due process).

Courts, to answer this question, have first asked if the predicate statute is too broad to always qualify as a violent felony. *Burris*, 912 F.3d at 390-91 ("We first conclude that Ohio

12

felonious assault and Ohio aggravated assault are too broad to always (or categorically) qualify as violent-felony predicates—they each criminalize more conduct than is described in the ACCA and Guidelines elements clauses."). This determination about the broad scope of a felony statute is considered the "categorical approach." *See Descamps v. United States*, 570 U.S. 254, 260-61 (2013) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)). Under this approach, courts look to the statutory elements of the predicate crime and the judicial interpretation of those elements—not the facts underlying the conviction. *See Mathis,* 136 S. Ct. at 2248; *United States v. Harris*, 853 F.3d 318, 320 (6th Cir. 2017). "When a statute defines only a single crime with a single set of elements, application of the categorical approach is straightforward." *Mathis v. United States*, 136 S. Ct. 2243, 2244 (2016). The Sixth Circuit, in *United States v. Burris*, explained this approach as follows:

> The question for the sentencing court in the elements-clause context is whether every defendant convicted of that state or federal felony *must have* used, attempted to use, or threatened to use physical force against the person of another *in order to have been convicted*, not whether the particular defendant *actually* used, attempted to use, or threatened to use physical force against the person of another *in that particular case*.

912 F.3d at 392. If the statute criminalizes conduct that does not involve "the use, attempted use, or threatened use of physical

13

force against the person of another," the conviction may not serve as a predicate violent crime for the purposes of the statute. *Id.*

But, there's a caveat. If the statute is *divisible*—meaning it sets out one or more elements of the offense in the alternative, thereby defining multiple crimes—the "modified categorical approach" is used. *Id.* at 393. As *Burris* pointed out, sometimes legislatures enact divisible statutes "to create two different offenses, one more serious than the other." *Id.* (citing *Mathis*, 136 S. Ct. at 2249).

If the statute defining the predicate crime is divisible, courts review a "narrow category of documents to determine which portion the defendant violated." *Id.* (citing *United States v. Gooch*, 850 F.3d 285, 290-91 (6th Cir. 2017) (considering indictment and jury instructions to determine statutory alternative that was defendant's conviction offense)). If, after reviewing those documents, the Court finds that the defendant was convicted of a crime in the portion of the statute that does not involve "the use, attempted use, or threatened use of physical force against the person of another," the conviction may not serve as a predicate violent crime.

Magistrate Judge Ingram concluded that "the 'crime of violence' element of §§ 2261(a)(1) and (a)(2) renders the statutes divisible because it creates, via the predicate crime, various ways of committing interstate domestic violence that amount to

14

separate crimes." [DE 111 at 13]. Basically, because the statutory provisions Jacobs was convicted under require their own predicate offense, Magistrate Judge Ingram found that the statute was divisible.

This Court disagrees. *Burris* was clear that the statute, in order to be divisible, must list multiple *alternative sets of elements*. 912 F.3d at 393. Statutes that list or allow alterative factual *means* of committing a single element should not apply the modified categorical approach. *Id.* (citing *Mathis*, 136 S. Ct. at 2249). A divisible statute will set out *multiple separate crimes*. *Id*.

For example, in *Knight v. United States*, the Sixth Circuit found that the assault statute in question was divisible because it created a separate aggravated offense. 936 F.3d 495, 498 (6th Cir. 2019). The statute specifically stated that "[a] person who assaults any person … shall, *for the first offense*, be imprisoned not more than ten years; and, if in effecting or attempting to effect such robbery he wounds the person … or puts his life in jeopardy … shall be imprisoned not more than twenty-five years." *Id*. (citing 18 U.S.C. § 2114). It is obvious that the statute evaluated in *Knight* is divisible because it describes two different crimes with different punishments a person could commit.

15

The statutory sections Jacobs was convicted under are spelled out above. Courts have interpreted 18 U.S.C. § 2261(a)(2) to require the following elements:

> One, that the Defendant and the victim are spouses or intimate partners. Second, that the Defendant caused the victim to cross a state line by force, coercion, duress, or fraud. Third, that in the course of or as a result of that conduct, the Defendant intentionally committed a crime of violence upon the victim; and finally the fourth element, and that as a result of this crime of violence, the victim was bodily injured.

*United States v. Baggett*, 251 F.3d 1087, 1096 (6th Cir. 2001). The statute is also clear that once these four elements are met, no matter the underlying crime of violence, the defendant should be punished under 18 U.S.C. § 2261(b). Although that section provides various penalties for violating § 2261(a), the statute Jacobs was convicted under provides explicit elements that, if met, may lead to various forms of penalties. The same is true of many criminal statutory schemes.

But the statute defining the illegal behavior itself is clear: if a defendant causes a victim spouse or intimate partner to cross a state line by force, coercion, duress, or fraud, commits a crime of violence in doing so and causes bodily injury, he has committed interstate domestic violence. The specific "crime of violence," and for that matter, "force, coercion, duress, or fraud," are all *means* of committing the ultimate elements that make up the statute. They are not separate elements of separate crimes. The report and

recommendation itself makes this clear by stating that various "crimes of violence" are *ways* of committing interstate domestic violence. Nowhere does the report find that the statute has two or more different sets of *elements*.

Considering the purpose of the modified categorical approach and how it is applied, this analysis makes sense. If the statute has several alternative elements that change the essence of the crime itself, the Court could turn to those limited documents, such as the indictment and jury instructions, to then determine which alternative of a divisible statute formed the basis of the conviction. *Descamps*, 570 U.S. at 263-64 (2013). Once the Court finds out which alternative the defendant was convicted under, it then applies the traditional categorical approach. *Id*.

These approaches are in place because of the Sixth Amendment concerns presented by statutes like the ACCA and § 924(c). In *Descamps*, the Supreme Court explained the categorical approach's undercurrent of Sixth Amendment fears:

> We have held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Under ACCA, the court's finding of a predicate offense indisputably increases the maximum penalty. Accordingly, that finding would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction. Those concerns, we recognized in *Shepard*, counsel against allowing a sentencing court to "make a disputed" determination "about what the defendant and state judge must have understood as the factual basis of the prior plea," or

17

what the jury in a prior trial must have accepted as the
theory of the crime.

*Descamps*, 570 U.S. at 269 (citing *Apprendi v. New Jersey*, 530 U.S.
466, 490 (2000); *Shepard*, 544 U.S. at 25). This is also why the
class of documents the Court may consult when using the modified
categorical approach is so limited; it sticks to the materials
that simply identify the underlying elements of conviction.

Neither section of § 2261(a) defines multiple crimes with
different punishments per crime. Thus, the Court must use the
categorical approach, not the modified categorical approach, to
analyze the statute and determine if it is a predicate crime of
violence for purposes of § 924(c)'s elements clause. Magistrate
Judge Ingram's report and recommendation necessarily requires this
Court to make a judgment about the statutory structure and
interpretation, while looking at the facts of the conviction and
its unfortunate deficiencies. This circuit's case law is clear
that this is not only unnecessary, but it is specifically
prohibited.

Even if the Court felt compelled to use the modified
categorical approach, Magistrate Judge Ingram looked beyond simply
locating the elements Jacobs was convicted under before turning
back to the statute to apply the categorical approach. Instead,
the report and recommendation looked to the sufficiency of the
conviction itself—a question not before this Court. The report and

recommendation cites to several cases that address what is required to sustain an adequate § 924(c) conviction, and what is required to demonstrate an underlying crime of violence under the two portions of § 2261(a). The Court is not testing the sufficiency of the § 924(c) convictions themselves by determining if the underlying predicate crime and each of its elements was proven, as required on direct appeal. *See United States v. Smith*, 20 F. App'x 258, 268 (6th Cir. 2001) (to sustain a conviction under § 924(c), the record must establish that the underlying predicate offenses were committed by the defendant and were crimes of violence); *United States v. Keuhne*, 547 F.3d 667, 680 (6th Cir. 2008) (the government must prove beyond a reasonable doubt all the elements of the predicate offenses).

For example, it is clear from the text of the statute and the caselaw surrounding § 2261 that an element of the crime is proving another crime of violence. It may be true, that the government must prove, beyond a reasonable doubt, the elements of the underlying criminal offense to get a valid § 2261 conviction.[3] It

---

[3] The Court notes here that Magistrate Judge Ingram relied heavily on *United States v. Faulls* for the rule that every element of the underlying crime of violence in an interstate domestic violence charge must be proven beyond a reasonable doubt for the conviction to stand. *See* [DE 111 at 16]. But that case was decided in the Fourth Circuit Court of Appeals and on direct appeal from the defendant. *United States v. Faulls*, 821 F.3d 502 (4th Cir. 2016). Magistrate Judge Ingram points to *United States v. Page* in this circuit as standing for the same proposition, but the *en banc* court was divided and the issue directly addressed by Judge Karen Nelson

appears that the government failed to do so in this case. But, as explained above, Jacobs appealed his conviction and it was upheld by the Sixth Circuit. No challenge to the government's failure to identify and define the underlying crime of violence was brought, and that option is certainly foreclosed now.[4]

The validity of the underlying § 2261 convictions are not at issue in Jacobs' petitions, and thus, the failure of the jury instructions to specifically identify the underlying crime of violence and its elements bears no weight on the Court's application of *Davis* to Jacobs' § 924(c) convictions. A federal court should only look to those documents to determine which set of elements the defendant was convicted under—then stop and examine

---

Moore's concurrence was whether the VAWA was a proper exercise of Congress's Commerce Clause power. 167 F.3d 325, 334-35 (6th Cir. 1999). The closest statement to *Faulls* in *Page* appears in a footnote, where Judge Moore noted that the jury was given the elements of assault, not menacing, meaning menacing could not be a predicate crime on which the jury based its conviction. 167 F.3d at 332, n. 5.

[4] Jacobs did not challenge the jury instructions' failure to identify the underlying crimes of violence in the § 2261 charges on direct appeal. Statutory claims brought in a motion pursuant to § 2255 are proper only when the issues presented in the motion were raised on direct appeal or, if the issue could not be raised, when a miscarriage of justice arises. *Logan v. United States*, 434 F.3d 503 (6th Cir. 2006). Jacobs' § 2255 petition does not challenge the jury instructions as they relate to his § 924(c) convictions on the grounds that they lacked all of the essential elements of the underlying crime of violence. Nor does he challenge the instructions as they relate directly to his § 2261(a) convictions. It is not clear how successful such a challenge would be under the "miscarriage of justice" standard, but that issue is not before the Court today.

those elements to see if they might be "crimes of violence." Because this Court is of the opinion that § 2261's "crime of violence" element does not create an alternative punishable crime or set of separate elements, but rather is a stand-in phrase that represents different means to commit interstate domestic violence, this process of examining the jury instructions and indictment are unnecessary in the first place. In practice, this makes sense: the indictment and jury instructions in this case did not provide, and were not required to provide, some "alternative" set of § 2261 elements that could *only be identified* by looking to those jury instructions. In other words, it is crystal clear what the elements of both versions of interstate domestic violence consist of.

**E. Interstate domestic violence, as defined in the 1996 version of the statute, is categorically a crime of violence as defined by § 924(c)(3)(A)**

Now, the Court must decide if the two sections of § 2261(a) qualify as "crimes of violence" under § 924(c) using the traditional categorical approach. Because the residual definition was found unconstitutionally vague by the Supreme Court in *Davis*, the Court must determine if §§ 2261(a)(1) and (a)(2) categorically have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Importantly, "physical force" means "force capable of causing pain or injury." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

21

Once the Court in *Knight* determined which section of the statute the defendant was convicted under, it turned to consider whether that provision could be a crime of violence under § 924(c)(3)(A). 936 F.3d at 499. "The requirement that the defendant must assault with the intent to rob, rob, or attempt to rob and in the process 'wound the person … or put[] his life in jeopardy by the use of a dangerous weapon' necessarily requires the use, attempted use, or threatened use of physical force as defined in *Johnson I.*" *Knight,* 936 F.3d at 499. The Court further noted that the underlying crime must have as an element some degree of, or the threat of, physical force in the more general sense. *Id*. Looking to *United States v. Verwiebe*, where the Sixth Circuit held that "assault with a dangerous weapon, with intent to do bodily harm" under 18 U.S.C. § 113(a)(3) is a crime of violence, the Court in *Knight* found that the statute in question was inherently violent, too. *Id*. at 499-500. *Verwiebe* looked both to the assault element—because assault, in a general sense, "already includes some use or threat of physical force"—and cases finding that the mandated use of a "dangerous weapon" meets the requirement. 874 F.3d 258, 261 (6th Cir. 2017).

Similarly, in a recently decided case, the Sixth Circuit looked to "history and common sense" to find that robbery with a deadly weapon involves an element of physical force. *Porter v. United States*, ___ F.3d ___, 2020 WL 2551877, *2 (6th Cir. May 20,

22

2020) (evaluating whether Georgia's armed robbery statute qualifies as a "violent felony" under the nearly identical elements clause in § 924(e)). The Sixth Circuit found that a defendant need not even display the weapon to find that it qualifies as a violent felony predicate. *Id.* at *2 (internal citations omitted). Although the statutory text of this case does not involve a deadly weapon, *Porter* and *Knight* are instructive of how to examine § 924(c)(3)(A)'s requirements in light of § 2261(a).

First, the Court will examine the "means" element of § 2261(a). Section 2261(a)(2) requires the use of "force, coercion, duress, or fraud." Section 2261(a)(1)'s comparable element requires the "intent to injure, harass, or intimidate" the intimate partner or spouse. Other than those differences, the statute's requirements are identical. The Sixth Circuit has held that "coercion or duress exist when a victim is subject to actual or threatened force of such a nature as to induce fear of impeding death or serious bodily harm from which there is no reasonable opportunity to escape." *Baggett*, 251 F.3d at 1096-97(citing *United States v. Helem*, 186 F.3d 449 (4th Cir.), *cert. denied*, 528 U.S. 1053 (1999)). While force, coercion, and duress clearly meet the requirements of § 924(c)(3)(A), and intending to injure someone can hardly be done without the use, attempted use, or threatened use of physical force, it is possible that fraud, harassment, and intimidation could be accomplished without force.

23

As the government alluded to in its response to Jacobs' petition, the statute's requirement of its own "crime of violence" is not entirely illuminating. Though the United States points out that it did not reference the "crime of violence" definition under 18 U.S.C. § 16 in the jury instructions, it concedes that "resort must be made" to its general definition. [DE 108 at 4]. Section 16's residual clause was also found to be unconstitutionally vague by the Supreme Court. *Dimaya*, 138 S. Ct. at 1215. Thus, for the purposes of asking whether this element necessitates the use of force, the Court looks to § 16 and its identical elements clause definition. The only conclusion that can be reached is that a § 2261 conviction must also have, as an element, a crime of violence that contains, as an element, the use, attempted use, or threatened use of physical force: the exact definition also required under § 924(c)(3)(A). In sum, the use of the phrase "crime of violence" itself is persuasive of the argument that § 2261 has, as an element, use of force.[5]

---

[5] The United States, in its response to Jacobs' petition, takes *Dimaya* and the presumed use of § 16 to mean that § 2261 is divisible. [DE 108 at 4-5]. This is because, the government states, "[w]hen a generic description of a crime of violence is used in a VAWA count, the categorical elements approach and analysis does not fit." [*Id*. at 5]. This conclusory language does not engage the actual definition of a divisible statute as described in the cases cited earlier in this opinion, which clearly indicate that the predicate crime being examined under § 924(c)(3)(A) must create multiple crimes with different punishments. The United States instead explicitly cites the opposite of the rule, saying that

Another argument the government espouses in its response is that § 2261 requires that the victim is bodily injured—and thus, physical force must be used, attempted, or threatened to meet this element of the crime. Most circuits, pursuant to the Supreme Court's holding in *Johnson*, have held that statutes requiring bodily injury or "serious bodily injury" as an element necessarily connote the use of physical force.[6] *Johnson*, 559 U.S. at 140 ("physical" force plainly refers to force exerted by and through concrete bodies, distinguishing from intellectual force or emotional force). *Johnson* rejected the idea that physical force

---

when a statute can be committed multiple "ways" and through multiple "means," it is divisible. [DE 108 at 5].

[6] The majority of circuits agree that crimes requiring bodily injury as an element necessarily require use or threatened use of physical force. *See, e.g., United States v. Taylor*, 848 F.3d 476, 494 (1st Cir. 2017) (crime of assault on a federal employee had as an element the use, attempted use, or threatened use of physical force in part because it required bodily injury, which must have consisted of a forcible act); *United States v. Gobert*, 943 F.3d 878, 881 (9th Cir. 2019) ("Gobert contends that using a display of force with a dangerous weapon that reasonably causes a victim to fear immediate bodily injury does not necessarily require the use or threatened use of violent force against another as required under *Johnson*. But we have addressed this precise assertion twice before and rejected it both times."); *United States v. Mann*, 899 F.3d 898, 902 (10th Cir. 2018) (every assault that causes serious bodily injury by definition involves the use of physical force); *United States v. Douglas*, 858 F.3d 1069 (7th Cir. 2017) (defendant's contention that Class C felony convictions of battery resulting in serious bodily injury under Indiana law does not require use of force was unfounded because Indiana courts had never convicted anyone of committing battery after "light touch"); *cf. United States v. Bennett*, 863 F.3d 679, 681-82 (7th Cir. 2017) ("bodily injury" under *state* law does not necessarily connote violence).

could be the slightest offensive touch, instead holding that physical force means violent force capable of causing physical pain or injury to a person. *Id.* at 140. In some cases, courts have found that even *threatened* bodily injury connotes the use of physical force. The Sixth Circuit has explicitly held that "crimes requiring proof of serious physical injury necessarily require proof of violent physical force." *Verwiebe*, 874 F.3d at 262 (citing *United States v. Anderson*, 695 F.3d 390, 401 (6th Cir. 2012)).

Jacobs looks at the bodily injury question in a vacuum and focuses on immaterial semantics. He argues that because *Verweibe* examined the phrase "serious" bodily injury, and not bodily injury alone, that bodily injury elements cannot categorically require use of force. He also breaks down a jury instruction stating that "bodily injury" is an act that results in physical injury or sexual abuse,[7] and defines sexual abuse to be any non-consensual sexual contact. Jacobs argues that the Sixth Circuit has blanketly held that non-consensual sexual contact may be non-violent. *See United States v. Johnson*, 707 F.3d 655, 662 (6th Cir. 2013). However, *Johnson* only held that Kentucky's first-degree stalking statute may be a crime of violence under the now-unconstitutional residual clause under the ACCA. *Id.*

---

[7] This was also the definition of bodily injury under the VAWA when Jacobs was convicted. 18 U.S.C. § 2266.

Regardless, Jacobs paints the holding with a broad brush and concludes that because non-consensual sexual contact could possibly be non-violent, it does not meet the use of force requirement in § 924(c)'s elements clause. The Court is not convinced by this argument. The question is not "is non-consensual sexual contact always violent," the question is "does non-consensual sexual contact that results in bodily injury require the use, attempted use, or threatened use of force?" Even the slightest non-consensual sexual contact that causes bodily injury connotes physical force. Jacobs has not argued—nor could this Court find—an example of a conviction under § 2261(a) that did not consist of the defendant using force in some manner to cause bodily injury to the victim.

When considering whether non-consensual sexual contact is inherently violent or forcible, it helps to consider the "ordinary, contemporary, and common meanings of the words used." *Perrin v. United States*, 444 U.S. 37, 42 (1979). Black's Law Dictionary, for example, explains that unlawful contact with another person *is* a forcible injury. *Forcible*, Black's Law Dictionary (11th ed. 2019) ("To lay one's finger on another person without lawful justification is as much a forcible injury in the eye of the law, and therefore a trespass, as to beat him with a stick."). Because a person has a legal right to be free from contact he or she has not agreed to, non-consensual sexual contact is inherently

27

forcible. Add to the equation that the non-consensual sexual contact is considered a bodily injury in reference to sexual abuse,[8] and the conclusion is inescapable that this kind of contact is impossible without the use or threatened use of physical force on the victim.

Here, both provisions of the statute require not only a violent crime, but for bodily injury to have occurred as an element. Even if the underlying "crimes of violence" in Jacobs' § 2261 convictions were defined under the residual clause or, as is clear now, not at all, the bodily injury requirement at a minimum connotes the use of physical force. Like the Sixth Circuit in *Verweibe*, this Court must ask how it is possible to suffer bodily injury following a crime of violence that necessarily requires the use of force, without force capable of producing such injury? *See Verwiebe*, 874 F.3d at 261.

### IV. CONCLUSION

As the Sixth Circuit explained in *Porter*, history and common sense should guide the Court's analysis. The Violence Against Women Act[9] ("VAWA") created a crime titled "interstate domestic violence"

---

[8] The Sixth Circuit has directly held that when the defendant forced a victim spouse to perform sex acts on him and other men, the victim was, in fact, bodily injured under § 2261(a)(2). *United States v. Ruggles*, 210 F.3d 373 (6th Cir. 2000).

[9] The VAWA was passed in 1994 as part of the Violent Crime Control and Law Enforcement Act, Pub. L. No. 103-322, 108 Stat. 1796, as a response to the "escalating problem of violence against women." When the Congressional Research Service presented a historical

that in itself required a crime of violence to be committed. There are three separate mentions of the term "violence" just within the statutory text Jacobs was convicted under. Not only does the statute meet the requirements of the Sixth Circuit's categorical approach, but history and common sense tells even the most elementary of statutory interpreters that interstate domestic violence would seem to qualify as a predicate crime of violence under § 924(c)(3)(A)'s elements clause.

The unfortunate truth of Jacobs' case unearthed through this process is that the government's jury instructions appear to be flawed. Does this mean that the jury was not fully presented with the elements of an underlying crime of violence essential to interstate domestic violence charges under 2261(a)? Possibly. Is that issue barred by Jacobs' failure to bring it on appeal? Possibly. Do these questions about the merits of the underlying conviction that the § 924(c) charges are based on mean that the predicate interstate domestic violence statute as defined at the time does not meet § 924(c)(3)(A)'s definition of a crime of violence? No.

---

overview of the VAWA in 2019, as the statute was up for reauthorization, it noted from the beginning that the Act addressed "congressional concerns about violent crime, and violence against women in particular." Cong. Res. Serv., The Violence Against Women Act (VAWA): Historical Overview, Funding, and Reauthorization (April 23, 2019).

Accordingly, **IT IS ORDERED** as follows:

(1) The United States' objections [DE 112] to the report and recommendation are **SUSTAINED**;

(2) The report and recommendation [DE 111] entered in this matter pursuant to 28 U.S.C. § 636 is **REJECTED** as the opinion of this Court; and

(3) That Elisha Jacobs' motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence by a person in federal custody [DEs 99, 102] is **DENIED**.

This the 22nd day of June, 2020.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge

30